**NOT RECOMMENDED FOR PUBLICATION**
File Name: 05a0338n.06
Filed: May 2, 2005

**No. 04-3213**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| DR. MARJORIE H. MAHLER; EDMUND L. DE ROTHCHILD, CBE TD; JACK BENTLEY; and LEE F. ROBINSON, | ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| JOSEPH F. STARTARI, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| NIGEL NICHOLSON; CLUBB CAPITAL LIMITED; BIOTECHNA ENVIRONMENTAL INTERNATIONAL LIMITED; and MONTREAL TRUST COMPANY OF CANADA, | ) ) ) ) ) | |
| Defendants-Appellees. | | |

Before:  SILER, COLE, and CLAY, Circuit Judges.

**SILER, Circuit Judge.**  Plaintiffs Dr. Marjorie H. Mahler; Edmund L. de Rothchild, CBE

TD; Jack Bentley; and Lee F. Robinson appeal the district court's dismissal of their misappropriation

action for lack of personal jurisdiction against Defendants Nigel Nicholson; Clubb Capital Limited

("Clubb Capital"); Biotechna Environmental International Limited ("BEIL"); and Montreal Trust

Company of Canada ("Montreal Trust").  We **AFFIRM**.

**BACKGROUND**

Mahler is a Texas resident, while the remaining Plaintiffs reside in the United Kingdom ("U.K."). All are former shareholders of Biotechna Environmental Corporation ("Biotechna"), an Anguilla, British West Indies corporation. Nigel Nicholson is a citizen of the U.K., Biotechna director, and Clubb Capital employee. Clubb Capital, an investment/brokerage firm located in the U.K., is a Biotechna shareholder. BEIL is an Anguilla, British West Indies corporation and Biotechna subsidiary, while Montreal Trust is a Canadian bank with its principal place of business in Canada.

In 1994, Plaintiffs entered into two agreements with Montreal Trust to restrict the distribution of millions of Biotechna shares. Both agreements were negotiated from Canada and none of the parties to this appeal was an Ohio citizen. In 1995, Startari was hired as Biotechna's president and chief executive officer, appointed its chairman in 1996, and was a director. He was also president and a director of Biotechna USA, a Biotechna subsidiary and Delaware corporation with its principal place of business in Florida. Startari occupied these roles until his resignation in 2001.

When Biotechna hired Startari, he was a Florida resident. During Startari's time in Florida, Biotechna and Montreal Trust entered into the two agreements and Biotechna moved from Canada to Anguilla. Startari moved to Ohio in 1999 and administered Biotechna's day-to-day affairs from his residence there. He discussed Biotechna's financing with Nicholson, who acted as a representative of Clubb Capital.

Once Startari moved to Ohio, he opened a bank account at Key Bank for Biotechna USA's funds. Funds from Biotechna's Anguilla account were transferred to Biotechna USA's Key Bank account. While in Ohio, Startari received correspondence relating to BEIL's patents via facsimile

and prepared correspondence on BEIL's letterhead. Biotechna USA transferred funds from its Key Bank account to others for payment of BEIL expenses. In an agreement dated July 11, 2001 (the "Agreement"), Biotechna repaid its outstanding debt to the Loan Note Holders.[1] Startari, Nicholson, Clubb Capital, and others collaborated on the Agreement through e-mail and/or facsimile communication while Startari was in Ohio. The only parties to the Agreement were Startari, Biotechna, and the Loan Note Holders. Pursuant to the Agreement, Biotechna assigned 90% of its share capital in BEIL to the Loan Note Holders and the remaining 10% to Startari. The Agreement was "subject to the laws of Anguilla and subject to the non-exclusive jurisdiction of the Anguillan courts."

Plaintiffs sued Defendants in 2002 for misappropriation of their Biotechna shares. The district court dismissed all claims against Nicholson, Clubb Capital, BEIL, and Montreal Trust for lack of personal jurisdiction. The other Defendants, Startari and Biotechna USA, stipulated to a dismissal without prejudice of the claims against them and are not parties to this appeal.

## DISCUSSION

This court looks to Ohio's long-arm statute, Ohio Revised Code § 2307.382, and Ohio law to determine whether personal jurisdiction exists over any Defendant. *See Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). We have established a familiar three-part test for determining whether specific jurisdiction exists over a nonresident defendant:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

---

[1]The Loan Note Holders (Biotechna's creditors) received all of Biotechna's assets.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). "[O]ur central inquiry is whether minimum contacts are satisfied so as not to offend 'traditional notions of fair play and substantial justice.'" *Calphalon Corp.*, 228 F.3d at 721 (citations omitted). We review *de novo* the district court's dismissal of Plaintiffs' complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). *See Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003).

**1. Nigel Nicholson**

Nicholson neither transacted business in Ohio nor purposefully availed himself of the benefits and privileges of its laws; rather, he merely served as a director of Biotechna (an Anguillan company) and communicated with an individual who happened to be in Ohio. *See Int'l Techs. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 395 (6th Cir. 1997); *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1119 (6th Cir. 1994). Nicholson was unaware of Startari's location; it was purely fortuitous that Startari had an Ohio address, *see Int'l Techs. Consultants, Inc.*, 107 F.3d at 395; and Startari's unilateral activity is an inappropriate consideration for deciding if Nicholson's contacts justify *in personam* jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). Moreover, Nicholson did not purposefully avail himself of the benefits and privileges of Ohio law, *see Calphalon Corp.*, 228 F.3d at 722-23; Plaintiffs' claims did not arise from Nicholson's attenuated contacts with Ohio, *see id.* at 724; and, as a foreign defendant, Nicholson could not reasonably expect to be haled into an Ohio court to defend this action. *See Int'l Techs. Consultants, Inc.*, 107 F.3d at 396 (negotiation of a contract that was to be governed by Swiss law and executed in Switzerland had no relation to forum state).

**2. Clubb Capital**

Ohio's long-arm statute does not reach Clubb Capital since it never transacted any business in Ohio. Clubb Capital's only place of business is in the U.K., from which it conducted all of its dealings with all parties. *See Helicopteros Nacionales*, 466 U.S. at 417-18. Like Nicholson, the only reason Clubb Capital directed any activities toward Ohio is because Startari found it convenient to be there. *See Calphalon Corp.*, 228 F.3d at 722-23. As to the allegations of Clubb Capital's acceptance of funds from Key Bank, Clubb Capital could hardly dictate where Startari drew his checks. *See Helicopteros Nacionales*, 466 U.S. at 416-17 ("Common sense and everyday experience suggest that . . . the bank on which a check is drawn is generally of little consequence to the payee and is a matter left to the discretion of the drawer.") (footnote omitted).

Clubb Capital was not a party to the Agreement and only signed it on behalf of the Loan Note Holders. The facts upon which Plaintiffs rely were undertaken by Clubb Capital to perform its obligations under the Agreement, and its receipt of funds from the Key Bank account cannot be attributed to it. *See Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 796 (6th Cir. 1996). Clubb Capital expressly invoked Anguillan jurisdiction in the Agreement; thus, there was no purposeful availment. *See Int'l Techs. Consultants, Inc.*, 107 F.3d at 396. Without purposeful availment, there is no personal jurisdiction over Clubb Capital. *See LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1303 (6th Cir. 1989) (The "failure to meet any one of the three [*Southern Machine* prongs] means that personal jurisdiction may not be invoked.").

## 3. BEIL

Like the other Defendants, BEIL did not purposefully avail itself of the benefits and protections of Ohio law. It only took a passive availment of Ohio opportunities and never did anything to create a "substantial connection" with Ohio. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75

(1985) (personal jurisdiction proper only when defendant himself created "substantial connection").

BEIL only had fortuitous contacts with Ohio that were the result of Startari's unilateral activities, such as his decision to move there and his selection of Key Bank. *See Helicopteros Nacionales*, 466 U.S. at 416-17. It "did not 'reach out' to [Ohio] for the purpose of creating 'continuing relationships and obligations' with any citizen of that state." *LAK, Inc.*, 885 F.2d at 1300 (citations omitted). The license agreement between BEIL and Biotechna USA had no connection with Ohio, was subject to Florida law, and concerned an Anguillan licensor, BEIL. Startari's mere use of BEIL's letterhead likewise does not indicate that BEIL purposefully availed itself of Ohio law. *See Suarez Corp. v. CBS, Inc.*, 23 F.3d 408, 1994 WL 142785, at *4 (6th Cir. 1994) (*per curiam*) (table).

Plaintiffs insist that their cause of action arose from BEIL's contacts with Ohio due to Startari's misappropriation of the Key Bank account's contents. This is erroneous since neither the license agreement nor its addendums was executed in Ohio. *See LAK, Inc.*, 885 F.2d at 1302. It would be unreasonable to hale an Anguillan company (that expected any dispute to be governed by Florida law) into an Ohio court. It is similarly unreasonable for BEIL to defend claims brought by former Biotechna (not BEIL) shareholders.

**4. Montreal Trust**

Montreal Trust is not subject to *in personam* jurisdiction in Ohio. It did not purposefully avail itself of the benefits and protections of Ohio law – all negotiations between Montreal Trust and Plaintiffs pertaining to their Biotechna shares ended more than five years before Startari moved to Ohio, and Montreal Trust only communicated with Startari because he lived there. *See Reynolds*, 23 F.3d at 1118-19 (no evidence "that a contract was negotiated in Ohio, created in Ohio, performed in Ohio, or breached in Ohio[,]" and plaintiff's Ohio residence was merely fortuitous).

Montreal Trust performed all duties and obligations under both agreements from Canada and any part Key Bank played in the history of this litigation is irrelevant because Biotechna was only disbursing funds to Montreal Trust under agreements executed elsewhere years earlier. *See Helicopteros Nacionales*, 466 U.S. at 416-17; *LAK, Inc.*, 885 F.2d at 1305 (even if Michigan bank was "somehow 'involved'" in the transaction, the transaction was "entitled to no consideration"). Most illustrative of Montreal Trust's lack of purposeful availment is that any breaches of the two agreements occurred in September 1999, more than two months before Startari moved to Ohio. Plaintiffs' claims did not arise from Montreal Trust's contacts with Ohio because any alleged breach (that would give rise to a claim against Montreal Trust) occurred in Canada, before Startari moved to Ohio. *See Calphalon Corp.*, 228 F.3d at 723-24; *Reynolds*, 23 F.3d at 1119-20. It would also be unreasonable to exercise personal jurisdiction over this Canadian company since no Plaintiff is an Ohio citizen and neither agreement had any connection with Ohio.

**AFFIRMED**.