*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2001 FED App. 0379P (6th Cir.)
File Name: 01a0379p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

JOHN R. NEAL and LEA A.
NEAL,

     *Plaintiffs-Appellees,*

     *v.*

SJEF JANSSEN,
     *Defendant-Appellant.*

No. 00-6122

Appeal from the United States District Court
for the Middle District of Tennessee at Columbia.
No. 98-00119—Thomas A. Higgins, District Judge.

Argued: September 24, 2001

Decided and Filed: October 23, 2001

Before: MERRITT, SILER, and DAUGHTREY, Circuit
Judges.

───────────────

**COUNSEL**

**ARGUED:** Clisby Hall Barrow, WALKER, BRYANT &
TIPPS, Nashville, Tennessee, for Appellant. Keith C.
Dennen, BAKER, DONELSON, BEARMAN &
CALDWELL, Huntsville, Tennessee, for Appellees.
**ON BRIEF:** Clisby Hall Barrow, John C. Hayworth, Robert

J. Walker, WALKER, BRYANT & TIPPS, Nashville, Tennessee, for Appellant.  Keith C. Dennen, BAKER, DONELSON, BEARMAN & CALDWELL, Huntsville, Tennessee, James C. Bradshaw III, Jonathan D. Rose, WYATT, TARRANT & COMBS, Nashville, Tennessee, for Appellees.

————————

## OPINION

————————

MERRITT, Circuit Judge.  This tort action for fraud and breach of fiduciary duty was brought by plaintiffs, John Neal and his daughter Lea Anne, residents of Tennessee, against Sjef Janssen, a citizen of Belgium.  The sole issue on appeal is whether the district court properly exercised personal jurisdiction over defendant.

Plaintiffs owned a dressage horse named "Aristocrat" that they wished to sell.  Aristocrat was boarded in the Netherlands at the time relevant to this cause of action.  In 1997 plaintiffs met with defendant in Florida, where defendant had a house, and arranged for him to serve as their agent in selling Aristocrat.  Defendant was familiar with dressage horses and trained riders and horses in the Netherlands.  It was understood that defendant would receive the standard 10% commission on any sale.  Plaintiffs expected that the horse might sell for about $500,000 due to its performances in dressage competitions.  Defendant made phone calls and sent facsimiles to plaintiffs in Tennessee on several occasions in 1997 to discuss the sale of the horse and to present offers to purchase the horse made by third parties. The offers were rejected by plaintiffs because the price was too low. In January 1998, defendant called Tyrone Neal, John Neal's son, in Tennessee and stated that he had a possible buyer for Aristocrat for about $310,000.  Tyrone Neal told defendant that $310,000 was too low, but defendant told Tyrone that plaintiffs had placed an unrealistically high value on the horse.  Defendant negotiated further with the prospective buyer and called back to Tyrone to say that the

may be present over that defendant without defendant's presence in the state.

Finally, *Mohasco* requires us to determine whether the contacts are substantial enough to make it reasonable to subject the defendant to the personal jurisdiction of the Tennessee courts.  Janssen engaged in a business transaction with plaintiffs that went on over a substantial period of time. He established a relationship with plaintiffs from which he hoped to profit financially.  He then defrauded plaintiffs, altering the amount of money to be sent to them in Tennessee. These facts are sufficient to make it reasonable for Tennessee to exercise personal jurisdiction over defendant.  Because defendant is not a citizen of the United States, we are sensitive to the "[s]pecial concerns [that] arise when a plaintiff attempts to bring a foreign defendant within our national borders . . . ." *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 797 (6th Cir. 1996).  In this case, however, defendant appears to be well traveled throughout the world, including the United States, where he once owned a house in Florida.  It seems apparent that defendant offered no defense not because of any undue hardship but rather because he had no valid defense on the merits.  His effort to stand on the defense of no jurisdiction must be rejected.

For the foregoing reasons, we affirm the judgment of the district court.

facsimiles to Tennessee regarding the sale of Aristocrat. Defendant contends that, under the law of this circuit, communications alone from an out-of-state location to plaintiffs are insufficient to support personal jurisdiction over a foreign defendant. *Reynolds*, 23 F.3d at 1116; *Market/Media Research, Inc. v. Union Tribune Pub. Co.*, 951 F.2d 102, 105 (6th Cir. 1991); *Serras v. First Tenn. Bank Nat'l Assoc.*, 875 F.2d 1212, 1217 (6th Cir. 1989).

The situation with which we are confronted here is different. In *Serras* and the other cases relied on by defendant, the communications merely solicited business from the forum or involved services not alleged to form the basis of the complaint. Janssen did not make just one phone call to plaintiffs in Tennessee in an effort to solicit business from them. The undisputed facts demonstrate that Janssen engaged in a course of conduct over a period of time that involved a single business transaction – the sale of an expensive horse – with plaintiffs, conducted by phone and fax. The actions that constitute the entire transaction were the allegedly fraudulent communications and these same communications form the bases for plaintiffs' tort claims. The alleged misrepresentations are the elements of the cause of action itself – a fact that the *Serras* court relied on in finding personal jurisdiction over defendants. *Serras*, 875 F.2d at 1218. As the court below aptly put it, the communications form the "heart of plaintiffs' claims." The conduct here was much more than a single phone call made in an effort to *start* a business relationship.

Physical presence is not the touchstone of personal jurisdiction. "It is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state [and national] lines, thus obviating the need for physical presence within a State when business is conducted." *Burger King*, 471 U.S. at 476. Accordingly, we hold that when a foreign defendant purposefully directs communications into the forum that cause injury within the forum, and those communications form the "heart" of the cause of action, personal jurisdiction

prospective buyer would pay $312,000. Defendant also told Tyrone during that conversation that because he had been unable to find a buyer at the price plaintiffs were asking, he would forgo his commission if plaintiffs accepted the $312,000 offer. Plaintiffs instructed defendant to sell the horse for $312,000, with no commission going to defendant. Plaintiffs received a wire transfer at their bank in Tennessee from defendant for $311, 964.50 shortly thereafter.

Plaintiffs subsequently learned, without disclosure from defendant, that the buyer had actually paid defendant $480,000. Plaintiffs brought an action against defendant in the Middle District of Tennessee for breach of fiduciary duty and fraud. Defendant filed a motion to dismiss based on lack of personal jurisdiction in lieu of an answer. Plaintiffs opposed the motion and the district judge referred the motion to a magistrate judge for a recommendation. The Magistrate Judge heard oral argument on the motion but did not hold an evidentiary hearing. The Magistrate Judge recommended that the motion to dismiss be denied. Defendant filed objections to the Report and Recommendation, but the district court adopted the Magistrate Judge's Report and Recommendation and found personal jurisdiction over defendant to be proper.

The matter was set for trial. Defendant first asked for a continuance of the trial and after it was denied, he informed the court he did not intend to appear for trial and would stand on his jurisdictional argument as a defense. Trial occurred without defendant or his counsel present. The jury returned a verdict in favor of plaintiffs in the amount of $250,000 compensatory damages and $250,000 in punitive damages. This appeal followed.

The merits of the judgment below were not presented for review on appeal. The sole issue raised by defendant on appeal is whether his contacts with Tennessee are sufficient to support the exercise of personal jurisdiction, a claim we review *de novo*. *Reynolds v. International Amateur Athletic Fed'n*, 23 F.3d 1110, 1117 (6th Cir. 1994).

A federal court in a diversity action may assume jurisdiction over a nonresident defendant only to the extent permitted by the state's long-arm statute and by the Due Process Clause. In order for there to be jurisdiction consistent with due process, Janssen must have sufficient minimum contacts with Tennessee so that "'traditional notions of fair play and substantial justice'" are not offended. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).[1] Janssen must have conducted himself so that he could "reasonably anticipate being haled into court" in Tennessee. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This requirement is met if the defendant "purposefully directed his activities at residents of the forum . . ., and the litigation results from alleged injuries that 'arise out of or relate to' those activities. . . ." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Plaintiffs seek to establish jurisdiction over defendant under the Tennessee long-arm statute, which Tennessee construes to extend to the limits of due process. Tennessee allows a court to exercise jurisdiction "if a tortious act is committed outside the state and the resulting injury is sustained within the state, the tortious act and the injury are inseparable, and jurisdiction lies in Tennessee." Tenn. Code Ann. § 20-2-214(a). Accordingly, even a single act by defendant directed toward Tennessee that gives rise to a cause of action can support a finding of minimum contacts sufficient to exercise personal jurisdiction without offending due process. *See Calder v. Jones*, 465 U.S. 783 (1984) (minimum contacts with California found where journalist wrote defamatory article in Florida that he knew would affect plaintiff in California).

We have employed three criteria for determining whether *in personam* jurisdiction based on a single act comports with due process: (1) the defendant must personally avail himself

---

[1] We note that due process as applied to non-United States citizens may incorporate principles of international law, *see* Restatement (Third) of Foreign Relations §§ 403 cmt. a, 421 cmt. a & Reporters' Notes 1, 2, but because the parties did not raise this issue, we will not address it here.

of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from defendant's activities there; and (3) the acts of defendant or consequences caused by defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable. *Reynolds*, 23 F.3d at 1116; *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

Under *Mohasco*, we must first decide if defendant "purposefully availed himself" of the privilege of acting in Tennessee. The acts of making phone calls and sending facsimiles into the forum, standing alone, may be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action. *See, e.g., Oriental Trading Co. v. Firetti*, 236 F.3d 938, 943 (8th Cir. 2001); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999); *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 282 (7th Cir. 1990). The plaintiffs contend that Janssen intentionally defrauded them in phone calls and faxes directed to plaintiffs or their agents in Tennessee about the price he received from the sale of Aristocrat. When the actual content of the communications into the forum gives rise to an intentional tort action, that alone may constitute purposeful availment. It is the quality of the contacts, not the quantity, that determines whether they constitute "purposeful availment." *LAK, Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1301 (6th Cir. 1989). Furthermore, the actions of sending false information into Tennessee by phone and fax had foreseeable effects in Tennessee and were directed at individuals in Tennessee. These false representations are the heart of the lawsuit – they were not merely incidental communications sent by the defendant into Tennessee.

The second *Mohasco* requirement – that the cause of action arise from the defendant's forum state activities – is also met. Defendant argues that he did not have sufficient minimum contacts with Tennessee because he never was physically present in the state and only made phone calls and sent