**Barbara HOLLEY–ADKINS, et al., Plaintiffs,**

v.

**Christine Spencer HOLLEY, et al., Defendants.**

**No. 1:04cv626.**

United States District Court, S.D. Ohio, Western Division.

Sept. 7, 2005.

Richard Manley Lewis, The Law Firm of Richard M. Lewis, Jackson, OH, for Plaintiffs.

DECISION AND ENTRY SUSTAINING MOTION TO DISMISS OF DEFENDANT CHRISTINE SPENCER HOLLEY (DOC. # 3); DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING, AS MOOT, IN PART MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT BY DEFENDANT MOUNTCASTLE FUNERAL HOME, INC. (DOC. # 5); JUDGMENT TO BE ENTERED IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFFS, DISMISSING PLAINTIFFS' COMPLAINT, WITHOUT PREJUDICE, FOR LACK OF PERSONAL JURISDICTION; JUDGMENT IS TO ENTER ACCORDINGLY; SUGGESTION TO PLAINTIFFS' COUNSEL; TERMINATION ENTRY

RICE, District Judge.

John Holley ("John"), who was married to Defendant Christine Spencer Holley

("Christine"), died on July 14, 2003, while he and Christine were living in Virginia. In their Complaint (Doc. # 1), Plaintiffs [1] allege that the director of Defendant Mountcastle Funeral Home, Inc. ("Mountcastle"), which is located in Dale City, Virginia, told them on that date that John's body would be cremated on July 21, 2003, and that the visitation and funeral would be held on July 18 and 19, 2003.[2] When Plaintiffs arrived at Mountcastle on July 18th, its premises were guarded by armed, off-duty sheriff's deputies. The Plaintiffs were greeted by Christine, in the room in which the viewing was to have taken place, who laughed at them loudly. An employee of Mountcastle told them that John had been cremated that morning.

In late September or early October, 2003, Christine sent a Christmas card from her home in Virginia to Betty Holley at the residence of her son, Thomas, located in Lawrence County, Ohio. Christine wrote in that card that Plaintiff Barbara Holley–Adkins owed $500.00 to the estate of her deceased brother, because he had loaned her that sum to pay for an abortion.

In their Complaint (Doc. # 1), the Plaintiffs set forth three claims for relief, to wit: 1) a claim of defamation/libel on behalf of Plaintiff Barbara Holley–Adkins against Christine (First Claim for Relief); 2) a claim of intentional infliction of emotional distress on behalf of all Plaintiffs against Christine (Second Claim for Relief); and 3) a claim of negligent infliction of emotional distress on behalf of all Plaintiffs against Christine and Mountcastle (Third Claim for Relief). This case is now before the Court on Christine's Motion to Dismiss (Doc. # 3) and Mountcastle's Motion to Dismiss or, in the alternative, for Summary Judgment (Doc. # 5). Each of those motions raises the question of whether this Court can exercise personal jurisdiction over the respective Defendant. With her motion, Christine argues, in the alternative, that the Court should dismiss this action for improper venue or for failure to state a claim upon which relief can be granted. In addition, again in the alternative, Mountcastle argues that it is entitled to summary judgment on the merits of the one claim Plaintiffs have asserted against it. As a means of analysis, the Court will initially decide whether it can exercise personal jurisdiction over one or both of the Defendants. If it concludes that it can, the Court will address the Defendants' alternative arguments to the extent necessary. The Court begins that analysis by setting forth the standards which must be applied whenever a party requests that the Court dismiss an action for want of personal jurisdiction.

In *Dean v. Motel 6 Operating L.P.*, 134 1269 (6th Cir.1998), the Sixth Circuit restated the procedures to be employed when a defendant moves to dismiss an action for want of personal jurisdiction:

> The procedure for determining jurisdiction, and the standard of review on appeal, are clearly defined in this circuit:
>
>> The case law establishes a settled procedural scheme to guide trial courts in the exercise of this discretion. If it decides that the motion can be ruled on before trial, the court may determine the motion on the basis of affidavits alone; or it may permit discovery

**1.** The Plaintiffs are John's sister, Barbara Holley–Adkins, mother, Betty Holley, and brother, Thomas Holley.

**2.** In their Complaint, the Plaintiffs allege those events occurred in both 2003 and 2004.

*Compare* Doc. # 1 at ¶ 5, *with Id.* at ¶ 6. Since the evidentiary materials submitted indicate that the events occurred in 2003, the Court so states in the text.

in aid of the motion [leading either to the preparation and submission of affidavits or serving as a predicate ·for an evidentiary hearing]; or it may conduct an evidentiary hearing on the merits of the motion.

*Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir.1989) (quotation marks omitted).

Ordinarily, the plaintiff must prove jurisdiction by a preponderance of the evidence. *Ibid.* That standard does not apply in this case, however, because (although there was discovery) there was no evidentiary hearing on the jurisdiction question. The lack of such a hearing mandates a specific standard for weighing the evidence:

> When ... a district court rules on a jurisdictional motion to dismiss ... without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff. ... To defeat such a motion, [the plaintiff] need only make a prima facie showing of jurisdiction. Furthermore, a court ... does not weigh the controverting assertions of the party seeking dismissal. ...

*CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir.1996) (emphasis, citations, and quotation marks omitted); *see Nationwide Mutual Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 792–93 (6th Cir.1996) (favoring interpretation expressed at *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 987 (6th Cir.1992) (Boggs, J., dissenting)); *Serras*, 875 F.2d at 1214.

We have explained elsewhere why this relatively light standard for a plaintiff in this situation is appropriate: "Any other rule would empower a defendant to defeat personal jurisdiction merely by filing a written affidavit contradicting jurisdictional facts alleged by a plaintiff." *Serras*, 875 F.2d at 1214. Although at first glance this appears to be a lopsided standard, the defendant has adequate recourse against a plaintiff who "merely [files] a written affidavit [asserting] jurisdictional facts":

> First, a defendant who alleges facts that would defeat the court's personal jurisdiction can invoke the court's discretion to order a pretrial evidentiary hearing on those facts. If the written submissions raise disputed issues of fact or seem to require determinations of credibility, the court retains the power to order an evidentiary hearing, and to order discovery of a scope broad enough to prepare the parties for that hearing. At this stage, the burden on the party asserting jurisdiction quite properly increases. She must now establish that jurisdiction exists by the same standard that would obtain if the matter were deferred to trial: the preponderance of the evidence.

*Ibid.* (citations omitted). Furthermore, [the defendant] can raise jurisdictional arguments during the trial as well. It is not as if this early determination, with the burden on the plaintiff so low, is the last word on jurisdiction. *See Conti*, 977 F.2d at 991 (Boggs, J., dissenting).

As a final consideration, we would not use this standard if the reason for not having an evidentiary hearing was that there was no "real dispute" as to the facts or to the extent of discovery. *International Technologies Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir.1997); *Conti*, 977 F.2d at 980. If there was no such dispute, it would be a waste of resources to conduct an evidentiary hearing, but we would not prejudice defendants because of this desire ·for efficiency. In such cases, plaintiffs

face the same burden [at trial] as they would if there had been an evidentiary hearing: proof of jurisdiction by a preponderance of the evidence.

*Id.* at 1271–72. *See also, Bridgeport Music, Inc. v. Still N The Water Publishing,* 327 F.3d 472, 478 (6th Cir.) ("Dismissal [when an evidentiary hearing has not been held] is proper only if all the specific facts which the plaintiff ... alleges collectively fail to state a prima facie case for jurisdiction") (internal quotation marks and citations omitted), *cert. denied,* 540 U.S. 948, 124 S.Ct. 399, 157 L.Ed.2d 279 (2003).

■ To determine whether personal jurisdiction exists over a nonresident defendant, a District Court must apply the law of the state in which it sits, subject to the constitutional limits of due process. *Cole v. Mileti,* 133 F.3d 433 (6th Cir.1998); *CompuServe v. Patterson,* 89 F.3d 1257, 1262 (6th Cir.1996). The Ohio Supreme Court has held that Ohio's long arm statute, Ohio Revised Code § 2307.382, does not extend to the limits of due process. *Goldstein v. Christiansen,* 70 Ohio St.3d 232, 238 n. 1, 638 N.E.2d 541, 545–46 n. 1 (1994). As a consequence, the Sixth Circuit has focused upon the traditional three-part test, when deciding whether it can exercise specific personal jurisdiction over an out-of-state defendant, rather than deciding whether the exercise of personal jurisdiction is appropriate under Ohio's long arm statute. *See e.g., Calphalon Corp. v. Rowlette,* 228 F.3d 718, 721 (6th Cir.2000).

■ In *Cole,* the Sixth Circuit restated that test, which must be applied in order to determine whether the exercise of specific personal jurisdiction over a particular defendant comports with due process:

First, the defendant must purposefully avail himself of the privilege of conducting activities within the forum state; second, the cause of action must arise from the defendant's activities there; and third, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make its exercise of jurisdiction over the defendant fundamentally fair. *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.,* 91 F.3d 790, 794 (6th Cir.1996); *Southern Machine Co. v. Mohasco Industries Inc.,* 401 F.2d 374, 381 (6th Cir.1968).

133 F.3d at 435. *Accord, Calphalon,* 228 F.3d at 721.

As is indicated, both Defendants have moved to dismiss for lack of personal jurisdiction. As a means of analysis, the Court will initially discuss the motion filed by Christine, following which it will turn to that filed by Mountcastle.

■ Christine argues that this Court cannot exercise personal jurisdiction over her, because she did not purposefully avail herself of the privilege of conducting activities in Ohio. She points out that her only alleged contact with Ohio is the Christmas card she mailed in September or October, 2003, from her home to Betty Holley at her son's home in Lawrence County, Ohio. That limited contact, Christine argues, is not sufficient to demonstrate that she purposefully availed herself of the privilege of conducting activities in Ohio.[3]

3. The Plaintiffs mention that Christmas card in their Complaint. *See* Doc. # 1 at ¶ 12. In their Memorandum in Opposition to Christine's motion, Plaintiffs' counsel states that Christine telephoned another brother of her deceased husband John to tell him that John had died and about the funeral arrangements.

*See* Doc. # 7 at 4–5. The Court will put aside the fact that this statement is supported by neither an allegation in the Complaint nor an affidavit or other evidentiary material. Nevertheless, since Plaintiffs' counsel does not even indicate whether that other brother was in Ohio when Christine *called* him, the Court

In support of her argument, Christine relies upon *Reynolds v. International Amateur Athletic Federation*, 23 F.3d 1110 (6th Cir.1994). That decision arose out of a dispute between Butch Reynolds, the one-time world record holder in the 400 meters, and the International Amateur Athletic Foundation ("IAAF"), the governing body of international track and field, over Reynolds' positive test for performance enhancing substances after a 1990 track meet in Monte Carlo. As a result, the IAAF had banned Reynolds from international competition for two years, a ban which included the 1992, Barcelona Olympics.[4] Reynolds brought a diversity action in the Southern District of Ohio, challenging the accuracy of the IAAF's substance screening. Ultimately, the District Court entered a default judgment in favor of Reynolds, awarding him more than $27 million and a permanent injunction. Thereafter, that court denied the request of the IAAF to vacate that judgment, on the theory that the District Court could not exercise personal jurisdiction over it. Upon appeal, the Sixth Circuit disagreed and held that the District Court had been without personal jurisdiction over the IAAF. In particular, the Sixth Circuit concluded that the IAAF had not purposefully availed itself of the privilege of conducting activities within the State of Ohio. *Id.* at 1116. The *Reynolds* court noted that a defendant purposefully avails itself of conducting activities in the forum state, when its contacts "create a substantial connection with the forum State." *Id.* (internal quotation marks and citation omitted). Therein, the Sixth Circuit concluded that the IAAF had not purposefully availed itself of the privilege of conducting

activities in Ohio, merely because it had communicated by telephone and mail with Reynolds while he was in Ohio and its agents had traveled to this State to meet with Reynolds concerning his suspension. The Sixth Circuit noted:

> Moreover, "[t]he use of interstate facilities such as the telephone and mail is a 'secondary or ancillary' factor and 'cannot alone provide the minimum contacts required by due process.'" [*LAK, Inc. v. Deer Creek Enterprises.* 885 F.2d 1293, 1301 (6th Cir.1989)] (quoting *Scullin Steel Co. v. National Railway Utilization Corp.*, 676 F.2d 309, 314 (8th Cir. 1982)) (interior quotation marks omitted). Although various IAAF officials sent correspondence or made telephone calls to Ohio, these communications are insufficient to establish purposeful availment. *See, e. g., Market/Media Research v. Union Tribune Pub.*, 951 F.2d 102, 105 (6th Cir.1991), *cert. denied*, 506 U.S. 824, 113 S.Ct. 79, 121 L.Ed.2d 43 (1992) (telephone calls and mail sent to Ohio insufficient for personal jurisdiction); *Capital Dredge & Dock Corp. v. Midwest Dredging Co.*, 573 F.2d 377, 380 (6th Cir.1978) (same).

*Id.* at 1119.

In support of their contention that this Court can exercise personal jurisdiction over their claims against Christine, Plaintiffs rely upon *Neal v. Janssen*, 270 F.3d 328 (6th Cir.2001). The plaintiffs therein, residents of Tennessee, owned a horse which they wanted to sell. The defendant, a resident of Belgium, was to act as their agent in the sale of that animal. To that end, the defendant frequently telephoned the plaintiffs while they were in Tennessee and sent facsimiles to them in that state.

---

does not consider that telephone call to be a contact with Ohio or evidence that Christine purposefully availed herself of the privilege of conducting activities in that state.

4. During the 1988 Olympics held in Seoul, Reynolds had captured a gold and a silver medal.

The defendant did not, however, ever enter Tennessee during the course of his representation of the plaintiffs. As a result of his representation of the plaintiffs, the defendant was able to defraud the plaintiffs out of approximately $200,000. After the District Court had denied defendant's request to dismiss for lack of personal jurisdiction and judgment had been entered in favor of the plaintiffs, the defendant appealed, arguing that personal jurisdiction could not be exercised over him. The Sixth Circuit disagreed, concluding that the defendant had purposefully availed himself of the privilege of conducting activities in Tennessee by entering into a contractual relationship with citizens of that state, telephoning them while they were in Tennessee and sending them facsimiles there.

Herein, Christine's use of the United States mail to send one Christmas card to Betty Holley does not cause the Court to conclude that she purposefully availed herself of the privilege of conducting activities in Ohio. As the Sixth Circuit indicated in *Reynolds*, the use of the intestate facilities such as the mails cannot, alone, establish the requisite minimum contacts to support

the exercise of personal jurisdiction. In addition, *Neal* is distinguishable, given that Christine did not enter into a contractual relationship with residents of Ohio or frequently communicate with them by telephone and facsimile.[5]

Based upon the foregoing, the Court concludes that the Plaintiffs have failed to meet their burden of demonstrating a prima facie case of personal jurisdiction.[6] Accordingly, the Court sustains the Motion to Dismiss (Doc. # 3), filed by Defendant Christine Spencer Holley.[7]

■ Mountcastle also argues that the Court cannot exercise personal jurisdiction over it, supporting that assertion with the affidavit of Michael Turch ("Turch"), its General Manager. Turch states that Christine retained Mountcastle to handle funeral arrangements for her deceased husband, John, and that all its dealings with Christine occurred in Virginia. Turch also indicates that Mountcastle does not solicit or conduct business or engage in another course of conduct in Ohio. In contrast, the Plaintiffs allege in their Complaint that the director of Mountcastle informed them about John's death and the plans for the funeral. *See* Doc. # 1 at ¶ 6.[8]

5. Plaintiffs cite the passage from *Neal*, wherein the Sixth Circuit stated that a single act directed at residents in Tennessee could support the exercise of personal jurisdiction. *See* 270 F.3d at 331. Since that statement was made in the context of a discussion of the Tennessee long arm statute, this Court does not consider it to stand for the proposition that it can exercise personal jurisdiction over Christine, based upon the single Christmas card she sent to Ohio.

6. Parenthetically, if this Court had concluded that Christine purposefully availed herself of the privilege of conducting activities in Ohio by sending the Christmas card to Betty Holley, that conclusion would have supported the exercise of personal jurisdiction *only* over the Plaintiffs' First Claim for Relief, the defamation/libel of Barbara Holley–Adkins against

Christine, since only that claim arose out of the Christmas card which Christine sent to Ohio. It bears emphasis the Christine sent that card about two to three months *after* the occurrence of the events giving rise to Plaintiffs' Second and Third Claims for Relief.

7. Given that conclusion, it is not necessary to consider Christine's arguments that the Court should dismiss the Plaintiffs' Complaint against her for improper venue or for failure to state a claim upon which relief can be granted; nor is it necessary to consider Plaintiffs' request that they be given leave to amend, if the Court concludes that their Complaint has failed to state such a claim.

8. Plaintiffs have also submitted a document which purports to be the affidavit of Barbara Holley–Adkins. That document is not an affi-

Even assuming that the director initiated the telephone call by which the Plaintiffs were given that information, this Court cannot conclude that Mountcastle purposefully availed itself of the privilege of conducting activities in Ohio, because its agent made a telephone call to someone in this state, to inform him or her about funeral plans concerning a resident of Virginia in that state.

Accordingly, the Court concludes that it cannot exercise personal jurisdiction over Mountcastle. Therefore, it sustains the branch of Mountcastle's Motion to Dismiss or, in the alternative, for Summary Judgment (Doc. # 5), with which it seeks dismissal for lack of personal jurisdiction, and overrules, as moot, the branch of that motion, with which Mountcastle seeks summary judgment.

Based upon the foregoing, the Court directs that judgment be entered in favor of Defendants and against Plaintiffs, dismissing Plaintiffs' Complaint (Doc. # 1), without prejudice, for lack of personal jurisdiction. Judgment is to enter accordingly.

If Plaintiffs move within the time permitted by Rule 59(e) of the Federal Rules of Civil Procedure, this Court, after having given the Defendants the opportunity of being heard, will consider transferring this matter to the appropriate District in Virginia, in accordance with 28 U.S.C. § 1406. *See Taylor v. Love,* 415 F.2d 1118 (6th Cir.1969) (holding that a transfer under § 1406 can be used to cure defects in personal jurisdiction as well as defects in venue).

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

davit, because it has not been sign by her. However, even if she had executed it as an affidavit or declaration, the statements therein would not support the assertion of personal jurisdiction over Mountcastle. Part of that document contains what purports to be a list of telephone calls *made by* Barbara Holley–Adkins on July 14, 2003, after her brother John had died. It bears emphasis that a court can exercise personal jurisdiction over a nonresident defendant such as Mountcastle, only if *it* has purposefully directed its activities toward forum residents. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Moreover, in *Youn v. Track, Inc.,* 324 F.3d 409, 417 (6th Cir.2003), the Sixth Circuit reiterated that such a principle ensures, *inter alia,* that a nonresident defendant will not be haled into a jurisdiction on the basis of another's unilateral activities. Therefore, the Court concludes that the telephone calls made by Barbara Holley–Adkins in Ohio, to Mountcastle in Virginia, do not support the proposition that the Court can exercise personal jurisdiction over Mountcastle.