[Cite as *Kubyn v. Follett*, 2019-Ohio-3152.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| STACEY G. KUBYN, et al., | : | **O P I N I O N** |
| Plaintiffs-Appellants, | : | |
| - vs - | : | **CASE NO. 2019-G-0194** |
| TAMARA FOLLETT, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 2018 P 000706.

Judgment: Reversed and remanded.

*R. Russell Kubyn*, Kubyn & Ghaster, LLP, 8373 Mentor Avenue, Mentor, OH 44060 (For Plaintiffs-Appellants).

*L. Bryan Carr*, Carr, Feneli & Carbone Co., L.P.A., 1392 S.O.M. Center Road, Mayfield Heights, OH 44124 (For Defendant-Appellee).

MATT LYNCH, J.

{¶1} Plaintiffs-appellants, Stacey G. Kubyn and R. Russell Kubyn, appeal the Judgment of the Geauga County Court of Common Pleas, granting defendant-appellee Tamara Follett's, Motion to Dismiss the Complaint for lack of personal jurisdiction. For the following reasons, we reverse the decision of the court below.

{¶2} On September 14, 2018, the Kubyns filed a Complaint for Money, Temporary Restraining Order, Injunctive Relief for Copyright Infringement, and Other Equitable Relief in the Geauga County Court of Common Pleas against Follett.

{¶3} On November 15, 2018, the Kubyns filed a First Amended Complaint for Compensatory and Punitive Damages, Injunctive Relief, and Other Equitable Relief for Defamation, Copyright Infringement, and Other Tortious Conduct. The Complaint identified the Kubyns as dog breeders doing business as Esquire Caucasian Mountain Shepherd Dogs USA in Geauga County, and Follett as a Canadian resident who breeds similar dogs doing business as ThunderHawk Caucasians. The Complaint was based on the following alleged conduct:

> Defendant Follett has engaged in underhanded, illegal, unethical, fraudulent, harassing and otherwise improper behavior and activities including, but not limited to, posting on Facebook her desire for the death of Defendant [sic] Stacey G. Kubyn, and requesting other people to post that they too wished death to befall Defendant Stacey G. Kubyn; embedding keywords on pages of her website such as "Stacey Kubyn" and "Khan" so that internet search engines will direct people to her website for her own financial gains and personal vendetta, ranting defamatory statements against the Plaintiffs, calling the Plaintiffs foul names, and using the Plaintiffs' aforementioned pictures and other media falsely, and fraudulently claiming right of publication thereof.

{¶4} The Amended Complaint further alleged jurisdiction over Follett existed pursuant to Ohio's long-arm statute "as she published and/or aided and/or abetted in the publishing of defamatory statements on the internet directed at the Plaintiffs, Ohio residents; and other Ohio residents have seen and/or could see the defamatory statements, * * * as such acts constitute causing tortious injuries by acts in the State of Ohio * * *."[1]

{¶5} On November 23, 2018, Follett filed a Motion to Dismiss, pursuant to Civil Rule 12(B)(2), on the grounds that "personal jurisdiction is lacking."

---

1. The First Amended Complaint contained nine causes of action: Misappropriation of Proprietary and Intellectual Interests (Count One); Violations of Ohio Revised Code Chapter 2741 (Count Two); Tortious Interference with Business Contracts and Relationships (Count Three); Federal and State Trade Infringements and Unfair Competition (Count Four); Quantum Meruit/Unjust Enrichment (Count Five); Fraud/Misrepresentation (Count Six); Injunctions (Count Seven); Invasion of Privacy/False Light (Count Eight); and Defamation (Count Nine).

{¶6} On December 21, 2018, the Kubyns filed a Brief in Opposition to Motion to Dismiss.

{¶7} On January 17, 2019, Follett filed a Reply to Plaintiffs' Brief in Opposition to Motion to Dismiss.

{¶8} On February 4, 2019, the trial court granted the Motion to Dismiss, ruling that "Plaintiffs have not adequately established sufficient minimum contacts between Geauga County and the Defendant to invoke this Court's jurisdiction over the Canadian Defendant (regardless of whether the Defendant is a U.S. citizen or not)."

{¶9} On February 5, 2019, the Kubyns filed a Notice of Appeal. On appeal, they raise the following assignment of error:

{¶10} "[1.] Reviewing the Appellee's Motion to Dismiss *De Novo*, the Trial Court erred to the prejudice of the Appellants by dismissing the First Amended Complaint despite personal jurisdiction over the US citizen appellee, notwithstanding her current residency in Canada."

{¶11} The issue before this court is whether the trial court may exercise personal jurisdiction over Follett.

{¶12} "Personal jurisdiction is a question of law that appellate courts review de novo." *Kauffman Racing Equip., L.L.C. v. Roberts*, 126 Ohio St.3d 81, 2010-Ohio-2551, 930 N.E.2d 784, ¶ 27. When a motion to dismiss for "lack of jurisdiction over the person" pursuant to Civil Rule 12(B)(2) is decided upon "written submissions and without an evidentiary hearing," the plaintiff need "only [make] a prima facie showing of jurisdiction." *Id.*; *Fraley v. Estate of Oeding*, 138 Ohio St.3d 250, 2014-Ohio-452, 6 N.E.3d 9, ¶ 11. In determining whether this burden is met, the trial court is "required to view allegations in the pleadings and the documentary evidence in a light most

3

favorable to the plaintiffs, resolving all reasonable competing inferences in their favor." *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 236, 638 N.E.2d 541 (1994).

{¶13} "Determining whether an Ohio trial court has personal jurisdiction over a nonresident defendant involves a two-step analysis: (1) whether the long-arm statute and the applicable rule of civil procedure confer jurisdiction and, if so, (2) whether the exercise of jurisdiction would deprive the nonresident defendant of the right to due process of law under the Fourteenth Amendment to the United States Constitution." *Kauffman Racing* at ¶ 28.

{¶14} Ohio's long-arm statute provides: "A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's * * * [c]ausing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state." R.C. 2307.382(A)(6). Similarly, Ohio's Civil Rules provide: "Service of process may be made outside of this state * * * upon a person who * * * has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's * * * [c]ausing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when the person to be served might reasonably have expected that some person would be injured by the act in this state." Civ.R. 4.3(A)(9).

{¶15} "R.C. 2307.382(A)(6) and Civ.R. 4.3(A)(9) permit a court to exercise personal jurisdiction over a nonresident defendant and provide for service of process to effectuate that jurisdiction if the cause of action arises from a tortious act committed outside Ohio with the purpose of injuring persons, when the nonresident defendant

4

might reasonably have expected that some person would be injured thereby in Ohio." *Clark v. Connor*, 82 Ohio St.3d 309, 313, 695 N.E.2d 751 (1998).

{¶16} The Amended Complaint alleges a variety of tortious conduct committed by Follett outside of Ohio but with the purpose of injuring the Kubyns and their business interests so that she might reasonably expect that they would be so injured. This conduct includes claims of misappropriation of proprietary and intellectual interests, the use of their personas for commercial purposes without authorization, interference with business contracts and relationships, trade infringement and unfair competition, fraud and misrepresentation, invasion of privacy (false light), and defamation.

{¶17} An affidavit executed by Stacey Kubyn and attached to the Kubyns' Brief in Opposition provides the following details: The Kubyns own and operate the website "http://www.esquirecaucasians.com" and maintain a Facebook account, the content of which is protected by copyright law. Follett is a self-proclaimed competitor and adversary of the Kubyns in the breeding of Caucasian Shepherds. Although a resident of Canada, Follett markets her dogs to purchasers in Ohio. Follett has used copyrighted images of the Kubyns and their stud dog, Kahn, which were created in Geauga County. She has falsely claimed ownership of the images. She has utilized social media to wage a defamatory campaign against the Kubyns personally and against their breeding business.[2] These statements have been published to thousands of people, including Ohio residents. She has used keywords such as "Stacey Kubyn" and the names of Ohio incorporated dog clubs to which Stacey belongs to direct people

---

2. Attached to the affidavit is the screenshot of an internet posting by Follett stating: "the Succubus [Stacey Kubyn] doesn't do GENETIC SCREENING … the Succubus doesn't offer GUARANTEES … the Succubus is breeding and promoting a dog that DOES NOT meet the Breed Standard!" The Amended Complaint identifies as allegedly defamatory statements claims by Follett that the Kubyns' "stud dog Kahn is a mixed breed Chow dog that should not be used for breeding" and that they keep their dogs in a "military surplus tent in the bitter cold Ohio winter."

5

to her own website.  She has stated that her "active goal" is to interfere with the Kubyns' Ohio business.

{¶18} Such claims have been held by numerous courts to establish a basis for the exercise of jurisdiction pursuant to R.C. 2307.382(A)(6) and Civ.R. 4.3(A)(9).  *See Kauffman Racing* at ¶ 44 ("[w]hen defamatory statements regarding an Ohio plaintiff are made outside the state yet with the purpose of causing injury to the Ohio resident and there is a reasonable expectation that the purposefully inflicted injury will occur in Ohio, the requirements of R.C. 2307.382(A)(6) are satisfied"); *MJM Holdings Inc. v. Sims*, 9th Dist. Summit No. 28952, 2019-Ohio-514, ¶ 29 ("fraudulent communications or misrepresentations directed at Ohio residents satisfy [R.C.] 2307.382(A)(6)'s requirements") (citation omitted); *Maui Toys, Inc. v. Brown*, 7th Dist. Mahoning No. 12 MA 172, 2014-Ohio-583, ¶ 55 (R.C. 2307.382(A)(6) and Civ.R. 4.3 permitted the exercise of personal jurisdiction over defendants who allegedly "committed tortious acts * * * by unfairly competing * * * through the misappropriation and use of confidential information and trade secrets").

{¶19} Federal district court decisions likewise provide considerable support for the exercise of personal jurisdiction based on the Kubyns' claims.  "Because district courts take a 'broad approach' in applying (A)(6), out-of-state actions that give rise to tortious injuries for purposes of the statute are legion."  *Haley v. Akron*, N.D. Ohio No. 5:13-cv-00232, 2014 WL 804761, *11 (conversion, copyright infringement, using proprietary information, false representations, fraudulent communications, and defamatory online postings "all meet the requirements of (A)(6)") (cases cited); *Mumaw v. Thistledown Racetrack LLC*, N.D. Ohio No. 1:13CV1048, 2015 WL 5437747, *4 ("not only loss of business but also loss of reputation and standing in the horse racing

6

community" based on defamation and false light claims "satisfied Ohio's long arm statute showing tortious injury in the State of Ohio"); *Puronics, Inc. v. Clean Resources, Inc.*, N.D. Ohio No. 5:12-cv-01053, 2013 WL 149882, *6 (sufficient facts to satisfy the requirements of Section 2307.382(A)(6) existed based on "[p]laintiffs' allegations of unfair competition, deceptive and unfair trade practices, defamation, and tortious interference with business relations in Ohio"); *J4 Promotions, Inc. v. Splash Dogs, LLC*, N.D. Ohio No. 08 CV 977, 2009 WL 385611, *8-11 (exercise of personal jurisdiction pursuant to R.C. 2307.382(A)(6) allowed based on claims of copyright infringement, defamation, deceptive trade practices, and tortious interference with business relations).

{¶20} Follett argues that *Kauffman* "is not applicable as the parties in this case had/have no business relationship whatsoever," she "has not transacted business in Ohio since 2003," and "there is no contact with Ohio that would allow the long-arm statute to reach Appellee." Appellee's brief at 9-10. The existence of a business relationship between the parties and/or direct contact with the forum state, however, is not necessary to satisfy the requirements of R.C. 2307.382(A)(6) and Civ.R. 4.3(A)(9). Follett cites no law to the contrary.

{¶21} The *Kauffman* decision itself makes clear that a defendant need not transact business in Ohio in order to be subject to long-arm jurisdiction. *Kauffman Racing*, 126 Ohio St.3d 81, 2010-Ohio-2551, 930 N.E.2d 784, at ¶ 44 and 43 ("even if Roberts did not publish or circulate his statements within the territorial boundaries of Ohio, he is not shielded from the reach of Ohio's long arm [statute]"); *Maui Toys*, 2014-Ohio-583, at ¶ 52 ("[e]ven if appellee Michael Brown had not transacted business in Ohio * * * R.C. 2307.382 and Civ.R. 4.3 still confer jurisdiction * * * because appellant's claims sound in tort").

7

**{¶22}** Nor is a business relationship between the parties necessary. In *Mumaw*, the plaintiffs, horse breeders in Ohio, were able to assert jurisdiction over the defendant, an animal rights activist in California who accused them of selling a horse for slaughter, based on defamation and false light claims despite the absence of any formal relationship between the parties. *Mumaw*, 2015 WL 5437747, at *4 ("[w]hile it is debatable whether Jones' activities satisfy Ohio's long-arm statute under a conducting business theory, the facts support a showing that Jones[] caused tortious injury in Ohio"). Similarly, in *Cash Homebuyers, Inc. v. Morningstar*, N.D. Ohio No. 5:05CV2296, 2006 WL 2869564, the plaintiffs, the owners and licensees of a business website based in Ohio, brought suit against a Florida resident alleging "that defendant has 'used and continues to download, distribute to the public, and/or make available for distribution to others, certain of the Copyrighted materials." *Id.* at *1. Despite the defendant's claims that she "does not live in Ohio, has not done business in Ohio, and has no personal or business contacts with Ohio," the district court found that the plaintiffs' claims satisfied "subsection [(A)]6 concerning causing a tortious injury in the state by an act outside the state committed with the purpose of injuring persons." *Id.* at *2 and *4.

**{¶23}** Having found that the Kubyns have met the requirements of the long-arm statute and Civil Rule, we address the issue of "whether the exercise of jurisdiction would deprive the nonresident defendant of the right to due process of law under the Fourteenth Amendment to the United States Constitution." *Kauffman Racing* at ¶ 28. "[D]ue process is satisfied if the defendant has 'minimum contacts' with the forum state such that the maintenance of the suit does not offend "'traditional notions of fair play and substantial justice.""" (Citations omitted.) *Id.* at ¶ 45. "The minimum-contacts requirement is met when a nonresident defendant 'purposefully avails [himself] of the

8

privilege of conducting activities within the forum State." (Citation omitted.) *Id.*

{¶24} Where, as here, the defendant does not have continuous and systematic contacts with Ohio, the plaintiff must establish that it would be proper for the forum court to exercise specific jurisdiction over the defendant. "Specific jurisdiction applies when 'a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" (Citation omitted.) *Id.* at ¶ 47. There are three issues to address when considering whether the exercise of specific jurisdiction is justified: "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." (Citations omitted.) *Id.* at ¶ 49.

{¶25} With respect to the purposeful availment element, the defendant's contacts with the forum state must "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." (Citations omitted.) *Id.* at ¶ 51. The purpose of this element is to ensure "that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." (Citation omitted.) *Id.* It has also been recognized that a defendant's contacts with the forum may be enhanced where the plaintiff's residence is "'the focus of the activities of the defendant out of which the suit arises.'" (Citation omitted.) *Id.*

{¶26} Follett's only real connections with Ohio (given the record before this court) derive from her deliberate and intentional conduct directed at the Kubyns and their business operating within Ohio. Stacey Kubyn's affidavit attached to the brief in

9

opposition claims that Follett's statements have been published, via social media, "to thousands of people, including Ohio residents." Attached to the affidavit are materials indicating that Follett has solicited business from at least one Ohio resident (located in Westlake) and Follett's own statement that she posts information about Stacey Kubyn "absolutely EVERYWHERE so everyone is warned." Another posting by Follett, which she addressed to Stacey Kubyn, invited "those many souls who have been wronged by SK to post a comment on why she deserves NOTHING MORE than a Swift, Shallow, and Unmarked Grave!"

{¶27} Construing the rather limited allegations and evidence in the Kubyns' favor, as we must in the absence of an evidentiary hearing or jurisdictional discovery, we find the purposeful availment element satisfied. They have established a prima facie case that Follett has, if not exactly availing herself of the privilege of acting in Ohio, purposefully undertaken to cause harmful consequences in Ohio.

{¶28} The Ohio Supreme Court's decision in *Kauffman* is instructive. In that case, the court addressed the issue of "whether an Ohio court can properly assert personal jurisdiction over a nonresident defendant when jurisdiction is predicated on that defendant's publication of allegedly defamatory statements on the Internet." *Id.* at ¶ 1. The plaintiff was an Ohio based manufacturing company and the defendant a resident of Virginia who had purchased an engine block from the plaintiff but had never been to Ohio. After a dispute arose between the parties over the quality of the block, the defendant "posted numerous rancorous criticisms of KRE on various websites devoted to automobile racing equipment and related subjects." *Id.* at ¶ 6.

{¶29} The Ohio Supreme Court deemed the minimum contacts element satisfied by application of what is known as the "effects test," the effect that the defendant's

10

conduct had in Ohio. The court held:

> [S]hould a company injured in Ohio need to go to Virginia to seek redress from a person who, though remaining in Virginia, knowingly caused injury in Ohio? * * * Roberts is not alleged to have engaged in untargeted negligence. Roberts's Internet commentary reveals a blatant intent to harm KRE's reputation. Roberts knew that KRE was an Ohio company. Roberts impugned the activities that KRE undertakes in Ohio. Roberts hoped that his commentary would have a devastating effect on KRE and that if there were fallout from his comments, the brunt of the harm would be suffered in Ohio.

*Id.* at ¶ 56.

{¶30} As noted above, Follett would distinguish *Kauffman* on the grounds that a business relationship existed between the parties therein which is lacking between Follett and the Kubyns. While the existence of a business relationship between the parties is certainly a consideration, it is not a requirement for the establishment of minimum contacts. The Ohio Supreme Court adopted the effects test from the United States Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). In *Calder*, a California plaintiff (an actress) brought a libel action against Florida defendants (a reporter and editor for the National Inquirer). Despite the lack of a business relationship between the parties, the high court found "[j]urisdiction over [the defendants] is * * * proper in California based on the 'effects' of their Florida conduct in California": "The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm * * * was suffered in California." (Footnote omitted.) *Id.* at 788-789.

{¶31} We acknowledge that "[t]he Sixth Circuit, as well as other circuits, have narrowed the application of the *Calder* 'effects test,' such that the mere allegation of

11

intentional tortious conduct which has injured a forum resident does not, by itself, always satisfy the purposeful availment prong." *Air Prods. & Controls, Inc. v. Safetech Internatl., Inc.*, 503 F.3d 544, 552 (6th Cir.2007); *Walden v. Fiore*, 571 U.S. 277, 290, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014) ("*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum," rather "[t]he proper question is * * * whether the defendant's conduct connects him to the forum in a meaningful way"). Even under a narrower application of the effects test, we conclude that the Kubyns have satisfied the purposeful availment element. Despite the limited record before us, the Kubyns' causes of action are based on conduct specifically directed at their in-state business which is also the locus of the alleged injuries. *Alahverdian v. Nemelka*, S.D. Ohio No. 3:15-cv-060, 2015 WL 5004886, *7 ("although Defendant may have never traveled to Ohio, nor has he previously conducted activities within Ohio, it is alleged that Defendant sent electronic communications to various internet users world-wide causing harm to Plaintiff whom Defendant knew to reside in Ohio * * * [which] injury suffices since the Defendant in this case, unlike the one in *Walden*, formed and initiated the contact with the forum State himself"); *Tamburo v. Dworkin*, 601 F.3d 693, 706 (7th Cir.2010) ("although they acted from points outside the forum state, these defendant specifically aimed their tortious conduct at Tamburo and his business in Illinois with the knowledge that he lived, worked, and would suffer the 'brunt of the injury' there" so as "to establish personal jurisdiction over these defendants under either a broad *or* a more restrictive view of *Calder*").

{¶32} The second element required to satisfy the demands of due process is that the cause of action must arise from the defendant's activities in the forum state, i.e., "that the cause of action * * * *have a substantial connection with* the defendant's in-state

12

activities." (Citation omitted.) *Kauffman Racing*, 126 Ohio St.3d 81, 2010-Ohio-2551, 930 N.E.2d 784, at ¶ 70. "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." (Citation omitted.) *Id.* A "lenient standard * * * applies when evaluating the 'arising from' criterion." (Citation omitted.) *Id.*

{¶33} We find this second element readily satisfied. The Kubyns assert that Follett has published defamatory statements about the quality of their breeding and the ethical treatment of their animals and have appropriated and/or exploited their names, images and involvement in local dog clubs from which conduct/contacts their claims arise. *Alahverdian* at *7 ("sending emails into the forum intended to harm a specific person located in that forum is sufficient to confer jurisdiction over a foreign defendant where the emails form the basis for the action"); *Tamburo* at 709 (the defendants "expressly aimed their allegedly tortious conduct at Tamburo and his Illinois-based business for the purpose of causing him injury there; these 'contacts' within the forum state are the cause in fact and the legal cause of Tamburo's injury"); *Neal v. Janssen*, 270 F.3d 328, 333 (6th Cir.2001) ("when a foreign defendant purposefully directs communications into the forum that cause injury within the forum, and those communications form the 'heart' of the cause of action, personal jurisdiction may be present over that defendant without defendant's presence in the state").

{¶34} The third and final element of the due process inquiry is that "the acts of the nonresident defendant or consequences caused by the defendant must have a substantial connection with the forum state to make exercise of jurisdiction over the defendant reasonable." *Kauffman* at ¶ 71. When "the first two elements of a prima facie case [are satisfied] then an inference arises that this third factor is also present"

13

and "[o]nly the unusual case will not meet this third criterion." (Citations omitted.) *Id.*

**{¶35}** We do not find it at all unreasonable that the Kubyns should seek redress for their alleged wrongs in the forum where those wrongs have been suffered or that Ohio should provide a forum for their redress. *Compare Haas v. Semrad*, 6th Dist. Lucas No. L-06-1294, 2007-Ohio-2828, ¶ 21 ("[i]t should be foreseeable to one who places a threatening phone call into a jurisdiction that he may be haled into the state to answer a petition seeking protection against him"). Ohio's long-arm statute expressly sanctions the exercise of jurisdiction over those who cause tortious injury within this state regardless of where the tortious conduct occurred when such exercise is consistent with constitutional due process requirements. Admittedly such conduct is greatly facilitated and enabled by the development of the internet and social media, but this development does not alter the scope of the jurisdiction of Ohio's courts.

**{¶36}** The Kubyns' sole assignment of error is with merit.

**{¶37}** For the foregoing reasons, the judgment of the Geauga County Court of Common Pleas is reversed and this matter is remanded for further proceedings consistent with this opinion. Costs to be taxed against the appellee.


CYNTHIA WESTCOTT RICE, J.,

MARY JANE TRAPP, J.,

concur.

14