NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0893n.06
Filed: November 14, 2005

**No. 03-6205**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| PAUL F. RICE, AS TRUSTEE FOR PAGAN LEWIS MOTORS, INC. TRUST, PAGAN LEWIS MOTORS, INC., JACK PAGAN, ALLAN PAGAN, and PAUL F. RICE, | ) ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| V. | ) ) ) | |
| MICHAEL KARSCH, | ) ) | |
| Defendant-Appellee. | ) | |

**Before:** **DAUGHTREY and SUTTON, Circuit Judges; FORESTER, District Judge.**[*]

**FORESTER, District Judge.** The Plaintiffs-Appellants appeal the District Court's order granting Defendant-Appellee Michael Karsch's motion to dismiss and denying the Plaintiffs-Appellants' motion to amend the complaint against Karsch. Specifically, the District Court found that it did not have personal jurisdiction over Karsch and that, as a result, amending the Complaint against him would be futile. For the reasons discussed herein, the District Court will be AFFIRMED.

---

[*] The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

## I.    OVERVIEW

This case originates as a breach of contract for the sponsorship of an Indy Racing League race-car team.  The issue currently before this Court involves the personal jurisdiction of the District Court in Tennessee over the sponsor's general counsel, Michael Karsch.  Plaintiffs-Appellants, Paul Rice, as trustee for Pagan Lewis Motors, Pagan Lewis Motors, Jack Pagan, Allan Pagan, and Paul Rice, individually, brought suit in United States District Court for the Western District of Tennessee alleging diversity jurisdiction against Merchantonline.com, Inc., its chief executive officer, Tarek Kirschen, its stock transfer agent, American Stock Transfer and Trust Company, and its general counsel, Michael Karsch.  The suit claims that Merchantonline.com breached a sponsorship contract and that Karsch subsequently hampered Plaintiffs-Appellants' efforts to sell the stock Plaintiffs-Appellants accepted as collateral.

Plaintiffs-Appellants appeal from the District Court's dismissal of their claims against Karsch for a lack of personal jurisdiction and the denial of their motion to amend the Complaint. Plaintiffs-Appellants assert that by directing fraudulent and negligent statements toward Plaintiffs-Appellants and a third party in Tennessee over the telephone and by e-mail, Karsch, though located in Florida, availed himself of the laws of the state of Tennessee and is subject to personal jurisdiction therein.  Karsch replies that his contacts with the state were insufficient to satisfy the requirements of due process.

## II.    ISSUES

The issues presented by this appeal are (1) whether the District Court erred in finding that Karsch lacked sufficient contacts with the state of Tennessee so that the exercise of personal

jurisdiction within the state failed to satisfy the requirements of due process and (2) whether the District Court erred in denying Plaintiffs-Appellants leave to amend the Complaint against Karsch solely on the ground that the court contemporaneously dismissed the existing Complaint.

## III.    FACTUAL AND PROCEDURAL BACKGROUND

Merchantonline.com, a Florida-based company, contracted with Plaintiff-Appellant Pagan Lewis Motors, Inc., based in Tennessee, in May of 1999 to sponsor Pagan Lewis's race-car team and pledged to pay Pagan Lewis $1.53 million over the next five months.  In return, Pagan Lewis promised advertising rights to Merchantonline.com. To guarantee performance, Merchantonline.com granted Pagan Lewis a security interest in 200,000 shares of Merchantonline.com stock.  Under the stock pledge agreement, the shares were placed in escrow with Paine Webber in its Jackson, Tennessee office; the chief executive officer of Merchantonline.com, defendant Tarek Kirschen, retained ownership of that stock and Plaintiff-Appellant Paul Rice of Tennessee became trustee. Less than one month later, Merchantonline.com notified Pagan Lewis that it would default on the agreement.  The parties entered into a workout agreement, which rescheduled the payments by Merchantonline.com and placed 500,000 shares of Merchantonline.com stock in the names of Plaintiffs-Appellants Paul Rice, Allan Pagan, and Jack Pagan.[2]  Merchantonline.com breached the new agreement as well and failed to make the required payments.

Upon Merchantonline.com's second breach, Rice took steps to liquidate the collateral stock and sell the forbearance stock and, on August 17, 2000, requested that Karsch, as general counsel, located in Merchantonline.com's Florida office, issue a notice to the transfer agent authorizing transfer of the shares.  Plaintiffs-Appellants assert that under a Securities and Exchange Commission

---

[2]    In March of 2000, the Merchantonline.com stock split and thereafter Rice owned 500,000 shares and Allan and Jack Pagan each owned 250,000 shares. [J.A. at 95]

regulation commonly known as Rule 144, the stock in question was restricted stock and could not be sold until Merchantonline.com filed notice with the transfer agent certifying that the shares had been held for one year, that the amount to be sold did not exceed one percent of the outstanding shares, and that Merchantonline.com had complied with reporting requirements. [J.A. at 75, 170] See 17 C.F.R. § 230.144.  In response to the August 17th letter from Rice inquiring about the Rule 144 letter, Karsch notified Rice by letter dated August 31, 2000 that Karsch would instruct the transfer agent to place a stop transfer on the shares. [J.A. at 193]  Subsequently, on September 15, 2000, Karsch spoke with the Plaintiffs-Appellants' broker at Paine Webber, Angela Lowery, and informed her that she was not authorized to sell any shares on behalf of Plaintiffs-Appellants. [J.A. at 194]  He also sent a confirmation email to Ms. Lowery, who, it is alleged, was located in Jackson, Tennessee.  [J.A. at 194]

Plaintiffs-Appellants brought this action against Karsch, Merchantonline.com, Kirschen, and American Stock Transfer and Trust Company seeking damages and equitable relief on December 12, 2000.  Plaintiffs-Appellants filed claims against Karsch for tortious interference with contracts, civil conspiracy, legal malpractice, and breach of fiduciary duty and asked the District Court to enjoin Karsch and the other defendants from further hindering Rice's efforts to liquidate and sell the stock. Through their initial and Amended Complaints, Plaintiffs-Appellants allege that Karsch also made misrepresentations to Rice, upon which Rice relied to his detriment, that the letter was forthcoming and that Karsch had issued the letter when he had not done so.  They contend  that Karsch continued to ignore requests for the letters by Rice and by Paine Webber on Rice's behalf. Plaintiffs-Appellants allege that, as a result, Karsch tortiously interfered with the exercise of the contract and workout agreement by refusing to issue the Rule 144 letter, by instructing the transfer

4

agent not to authorize sale of the stock, by making false statements to Rice regarding issue of the letter, and by instructing Rice's broker that she was not authorized to sell the shares on Rice's behalf. The Plaintiffs-Appellants further allege that between August 2000 and February 2001, the price of Merchantonline.com's stock plummeted, substantially decreasing the value of Plaintiffs-Appellants' shares and resulting in damage to them.

The District Court issued a Preliminary Injunction on January 2, 2001, ordering Karsch to provide the necessary Rule 144 letters allowing transfer of the collateral stock and of the stock personally owned by Rice and the Pagans. Eventually, in February of 2001, Karsch issued letters for two of Rice's sales, but indicated that a third trade was "no good" because Merchantonline.com had failed to file its annual report in a timely manner. [J.A. at 75] Thereafter, Karsch sent emails to Rice and others on March 13, 2001, November 7, 2001, and November 8, 2001. [J.A. at 191, 195, and 196]

The District Court entered final judgment as to Kirschen on March 1, 2002, and granted a voluntary dismissal for the claims against American Stock Transfer and Trust Company, leaving Karsch and Merchantonline.com as the only Defendants. [J.A. at 109] On June 9, 2003, Karsch filed a motion to dismiss for lack of personal jurisdiction and for failure to state a claim upon which relief could be granted. Plaintiffs-Appellants responded and included a motion for leave to file a Second Amended Complaint, in which they added several new claims against Karsch based on the same allegations contained in the First Amended Complaint.[3]

On September 2, 2003, the District Court granted Karsch's motion to dismiss, finding that the court lacked personal jurisdiction over Karsch. [J.A at 202] The court held that Karsch's

---

[3] In their proposed Second Amended Complaint, Plaintiffs-Appellants added the following claims against Karsch: negligent damage to personal property and security, negligent conversion, and negligent misrepresentation. [JA, 224-25].

contacts with Tennessee did not satisfy the jurisdictional requirements of the Due Process Clause of the Fourteenth Amendment because Karsch's alleged misconduct occurred in Florida and was not purposefully directed into Tennessee. The District Court, as a result of the dismissal, denied the Plaintiffs-Appellants' motion to amend the complaint against Karsch as futile. Plaintiffs-Appellants then filed a motion to alter or amend judgment, claiming that excusable neglect or mistake had led to the omission of evidence that Karsch's e-mail to their broker at Paine Webber had been sent to the broker's office in Jackson, Tennessee.[4] The court found the motion was not timely under the ten-day limitation of Rule 59(e) and that the omission did not constitute excusable neglect under Rule 60. See Fed.R. Civ.P. 59(e), 60(b). This appeal followed.

## IV.     JURISDICTION

The District Court exercised jurisdiction over this civil matter pursuant to diversity of citizenship and the provisions of 28 U.S.C. § 1332. This Court has appellate jurisdiction under 28 U.S.C. § 1291. The Notice of Appeal was filed timely.

## V.     DISCUSSION

### A.     Motion to Dismiss

#### 1.     Standard of Review

The court reviews *de novo* a district court's dismissal of a complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. See Bird v. Parsons,

---

[4]     In their motion to alter or amend judgment, Plaintiffs-Appellants sought to clarify that the e-mail to Rice's broker, Angela Lowery, had been sent by Karsch to Lowery's office in Jackson, Tennessee. (JA, 303). In their memo in opposition to the motion to dismiss, however, Plaintiffs-Appellants did indicate that the shares were located in an account at Paine Webber in Jackson and that Karsch sent an e-mail regarding Plaintiffs-Appellants' account to Lowery at Paine Webber. (JA, 171, 191). Drawing all factual inferences in favor of Plaintiffs-Appellants, the district court should have been aware of Lowery's location when it dismissed Plaintiffs-Appellants' complaint against Karsch. Though Karsch argues that Plaintiffs-Appellants attempt to introduce new facts through their brief that shouldn't be considered by the court, this is not one of them.

289 F.3d 865, 871 (6th Cir.2002). The Plaintiffs-Appellants have the burden of establishing the District Court's personal jurisdiction over Karsch. Nationwide Mut'l Ins. Co. v. Tryg Int'l Ins. Co., Ltd., 91 F.3d 790, 793 (6th Cir.1996). Because the District Court did not conduct an evidentiary hearing on the issue of personal jurisdiction in considering Karsch's motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Plaintiffs-Appellants "need only make a prima facie showing of jurisdiction." CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir.1996). They can meet this burden by "establishing with reasonable particularity sufficient contacts between [Karsch] and the forum state to support jurisdiction." Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir.2002) (citation omitted). Under these circumstances, this Court will construe the facts in the light most favorable to the nonmoving party in reviewing a dismissal pursuant to Rule 12(b)(2). Id. Ultimately, however, the Plaintiffs-Appellants bear the burden of demonstrating that such jurisdiction exists. See id.

2.      The Limits of Personal Jurisdiction in Tennessee

A federal court may exercise personal jurisdiction over a defendant in a diversity case only if such jurisdiction is (1) authorized by the law of the state in which the court sits; and (2) otherwise consistent with the Due Process Clause of the Fourteenth Amendment. See Youn v. Track, Inc., 324 F.3d 409, 417 (6th Cir.2003). Tennessee courts construe the state's long-arm statute to be coextensive with the limits of due process.[5]   See TENN. CODE ANN. § 20-2-214(a); Bridgeport Music, Inc., 327 F.3d at 477; J.I. Case Corp. v. Williams, 832 S.W.2d 530, 532 (Tenn. 1992). The District Court may exercise jurisdiction over Karsch, therefore, if personal jurisdiction is consistent

---

[5]      "Persons who are nonresidents of Tennessee . . . are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from . . . [a]ny basis not inconsistent with the constitution of this state or of the United States." TENN. CODE ANN. § 20-2-214(a).

7

with the requirements of federal due process. In fact, under Tennessee law, a court can exercise jurisdiction "if a tortious act is committed outside the state and the resulting injury is sustained within the state, the tortious act and the injury are inseparable, and jurisdiction lies in Tennessee." Neal v. Janssen, 270 F.3d 328,331 (6th Cir.2001) (quoting Tenn. Code Ann. § 20-2-214(a)). Personal jurisdiction comports with due process if Plaintiffs-Appellants can establish with reasonable particularity sufficient minimum contacts with Tennessee so that the exercise of jurisdiction over Karsch "would not offend traditional notions of fair play and substantial justice." Neogen Corp., 282 F.3d at 889 (quoting Int'l Shoe v. Washington, 326 U.S. 310, 316 (1945)).

This Court has established a three-part test to determine whether limited *in personam* jurisdiction over an out-of-state defendant satisfies the requirements of due process: (1) the defendant must purposefully avail himself of acting or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. See Southern. Machine Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir.1968). In this case, the District Court halted its discussion after finding that Karsch's contacts with Tennessee failed to satisfy the first prong of this test. We review this finding *de novo*.

### 3. Purposeful Availment

Purposeful availment, the "constitutional touchstone" of personal jurisdiction, exists where the defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (emphasis in original), and are such that he "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson,

8

444 U.S. 286, 295 (1980). This requirement ensures a defendant will not be subject to the jurisdiction of a forum solely as a result of "random, fortuitous, or attenuated contacts." Burger King Corp., 471 U.S. at 475.

In contrast to this, Karsch contends that he had no expectation of being haled into a Tennessee court because he acted only in Florida with no intent of any effect in Tennessee. The District Court has personal jurisdiction over Karsch if he engaged in conduct directed towards residents of Tennessee with the knowledge that his actions would have a detrimental effect within the state. Thus, personal jurisdiction is proper if Karsch deliberately directed his actions toward the state. See Burger King Corp., 471 U.S. at 476; Calder v. Jones, 465 U.S. 783, 811-12 (1984). "[T]he mere existence of a contract," however, "is insufficient to confer personal jurisdiction." Calphalon Corp. v. Rowlette, 228 F.3d 718, 722 (6th Cir. 2000).

The Plaintiffs-Appellants primarily rely on Neal v. Janssen, 270 F.3d 328 (6th Cir. 2001), in support of their position. In Neal, defendant Janssen, a resident of Belgium, was hired by the plaintiffs, who resided in Tennessee, to serve as their agent for the sale of a dressage horse they wished to sell. The horse was boarded in the Netherlands. The defendant and plaintiffs initially met in Florida, wherein they reached their agency agreement and stated their asking price of $500,000. In the process of trying to procure a buyer for the horse, the defendant Janssen made numerous communications to the plaintiffs in Tennessee. Specifically, he made phone calls and sent facsimiles on several occasions in 1997 to the plaintiffs in Tennessee to discuss the sale of the horse and to present various offers made by potential buyers. These offers were rejected by the plaintiffs. In 1998, Janssen called the plaintiffs' son, John Neal, in Tennessee and stated that he had a possible buyer for the horse, with a price of $310,000. Again, the plaintiffs rejected the offer, stating it was

9

too low. Thereafter, the defendant called the plaintiffs back in Tennessee and stated that, because he had been unable to find a buyer at the asking price, he would forego his sales commission if the plaintiffs accepted a new offer of $312,000. The plaintiffs accepted this offer and instructed Janssen to sell the horse. They received shortly thereafter a wire transfer for the sales price. The plaintiffs subsequently learned, though not from Janssen's disclosure, that the buyer had actually paid $480,000. Thereafter, the plaintiffs brought suit in Tennessee against Janssen for fraud and breach of fiduciary duty.

On appeal, the Court found that the "actions of sending false information into Tennessee by phone and fax had foreseeable effects in Tennessee and were directed at individuals in Tennessee." Neal, at 332. The Court further found that these misrepresentations were at "the heart of the lawsuit--they were not merely incidental communications" sent by Janssen. Id. Thus, the Court found that Janssen "purposefully availed" himself of the privilege of acting in Tennessee. Id.

In reaching this conclusion, this Court noted several factors. "[M]aking phone calls and sending facsimiles into the forum, standing alone, may be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action." Neal v. Janssen, 270 F.3d at 332 (citations omitted). Further, "[w]hen the actual content of the communications into the forum gives rise to an intentional tort action, that alone may constitute purposeful availment. It is the quality of the contacts, not the quantity, that determines whether they constitute 'purposeful availment.' " Id. (citing LAK, Inc. v. Deer Creek Enter., 885 F.2d 1293, 1301 (6th Cir.1989)) (emphasis added).

Here, the Plaintiffs-Appellants argue that Karsch's alleged wrongdoing consists, in part, of making fraudulent and negligent telephone calls to Rice in Jackson, Tennessee, of sending e-mails

and letters to Rice in Jackson, Tennessee containing similar statements, and of making a call and sending an e-mail to the Plaintiffs-Appellants' broker at Paine Webber in Jackson. Further, they assert that jurisdiction is proper because Karsch's actions allegedly caused financial damage to Rice, a Tennessee resident, and allegedly resulted in the devaluation of stock held in an escrow account located in Tennessee.

As a result of the foregoing, the Plaintiffs-Appellants contend that Karsch "carried out communications and correspondence directed to Plaintiffs in Tennessee in his capacity as corporate counsel and made representations in the course of a business relationship with the Plaintiffs in Tennessee." [Appellant's Brief, p. 18] Through these communications, the Plaintiffs-Appellants claim that Karsch made representations to them, which were known to be false, and that, by relying on them, they suffered damages in Tennessee, where the stock was allegedly held in escrow. The underpinning of these allegations rest, however, on the Plaintiffs-Appellants' attempt to characterize Karsch's action as being initiated by him, rather than in response to the Plaintiffs-Appellants' requests or actions or the District Court's orders.

Closer scrutiny reveals that the facts are not as clear as the Plaintiffs-Appellants assert. First, Plaintiffs-Appellants have not alleged that Karsch solicited, negotiated, or performed any aspect of the contract in Tennessee. As Plaintiffs-Appellants admit, *Rice initiated* the communications leading to the August 2000 letter and the September 2000 e-mail. "[O]n August 17, 2000, Plaintiff Rice had previously forwarded to Karsch by email and by certified U.S. mail, a formal written demand that the 'Rule 144 letter' be sent." [Appellant's Brief, p. 5]

The Court has thoroughly reviewed the factual assertions made by the Plaintiffs-Appellants. Reviewing the portions of the Joint Appendix to which they refer [J.A. at 188-197], the Court has

11

found that the record indicates that only the following communications were made by Karsch to anyone in Tennessee. First, on August 31, 2000, Karcsh sent a letter to Rice, Tarek Kirschen, and American Stock Transfer and Trust Company, MOL's transfer agent who allegedly is in New York,[6] in response to the August 17th email from Rice to Karsch concerning the resolution of the stock issue. [J.A. at 193] Further, on September 15, 2000, Karsch sent an email to Angela Lowery, the Plaintiffs-Appellants' broker at Paine Webber in Jackson, Tennessee, stating that she was not authorized to sell any stock on behalf of the Plaintiffs-Appellants. [J.A. at 194] That email references a "conversation" that occurred between Karsch and Lowery. Although the Plaintiffs-Appellants assert that Karsch telephoned Lowery [Appellants' Brief, p. 5], it is unclear from the record exactly who initiated this communication and whether it was by telephone. [Id.] Further, the Plaintiffs-Appellants have not brought any facts to the Court's attention which demonstrate that Karsch knew or should have known that Ms. Lowery was located in Tennessee.

Following these two communications, the Plaintiffs-Appellants filed their Complaint on December 12, 2000. Subsequent to the initiation of this action, Karsch sent an email to Rice, Kirschen, Lowery, and Bob Hausman on February 13, 2001. [J.A. at 195] This email indicated that Karsch had faxed his opinion letter to the "transfer agent," who, according to the Complaint, was located in Florida; however, the precise recipient of the fax, or the state in which the recipient was located, is not clear from the record. [Id.] Further, this email was in direct response to an email from Rice sent earlier in the day, which referenced an order of the District Court. [J.A. at 195.] Although the Court has been unable to identify with certainty in the Joint Appendix the District Court's Order to which this email referred, that email, as well as the District Court's language in its order

_____

[6] There is a factual dispute concerning where American Stock Transfer and Trust Company, the transfer agent, was located. The Plaintiffs-Appellants contend that it was in Tennessee, yet Karsch argues that it is located in New York.

dismissing Karsch as a defendant, indicates that the District Court directed Karsch to issue the Rule 144 Letters. [See J.A. at 195, 204] Again, however, the parties failed to clarify this in their briefs and the Joint Appendix appears to be void of any such order.

Thereafter, on March 7 and 8, 2001, Karsch sent emails to Rice as well. [J.A. at 191, 196] The March 7th email indicated that Karsch had faxed his opinion letter to the broker. [Id.] However, again, this email does not indicate to which "broker" he faxed the letter. In fact, the email indicates that the recipient was male, which would lead the Court to conclude that the agent referenced was *not* Angela Lowery, the broker with Paine Webber in Jackson, Tennessee. [Id.]

Additionally, all emails sent from Karsch to Paul Rice appear to have been sent to the email address "pfrracing@yahoo.com." There is nothing about this email address which indicates that Rice would have accessed his yahoo.com email account or otherwise read this email in Tennessee. Finding personal jurisdiction over an individual merely because he sends an email to a generic email address is incomprehensible to this court. If such reasoning were adopted by this Court, Karsch would be subject to personal jurisdiction in any location where said email address could be accessed, i.e, in *every* state regardless of whether the sender had any other contacts with that forum. Clearly, this was not the result intended by Neal or the prior cases discussing communications.

As a result of the foregoing, the Courts finds that actions taken or communications sent by a defendant *after* the filing of a Complaint, much less those taken pursuant to an order of the district court, should not, as a matter of law, be considered when determining whether the Defendant had "purposefully availed" himself of the privilege of acting on said jurisdiction. Thus, the Court shall not consider those communications made after December 12, 2000, in considering whether personal jurisdiction was proper.

Examining the two pre-December 2000 communications at issue, the basis of the Plaintiffs-Appellants' instant claims is that Karsch did *not* issue the Rule 144 letter. In other words, their main argument is that Karsch *failed* to act in a manner which would have subjected him to jurisdiction in Tennessee. Thus, to some extent, the Plaintiffs-Appellants' position taken in the Complaint and in their response to Karsch's motion to dismiss are contradictory. The only additional allegation, that Karsch refused to issue the Rule 144 letter to the transfer agent in New York, is inextricably linked to his representations to Rice that he had done so. Further, it is undisputed that *all* of Karsch's communications sent into Tennessee prior to the filing of the Complaint were as a result of communications initiated by Rice, not by Karsch. Under these circumstances, the Court finds that personal jurisdiction would be improper.

Moreover, Karsch's phone, mail, and e-mail contacts with Rice and Lowery in Tennessee occurred solely because Pagan Lewis Motors, although a Texas corporation, chose to have offices in Tennessee, not because Karsch sought to further his personal business or to create "continuous and substantial" consequences there. See, e.g., Calphalon Corp. v. Rowlette, 228 F.3d 718, 723 (6th Cir. 2000). Karsch's contacts were precisely the type of "random," "fortuitous," and "attenuated" contacts that the purposeful availment requirement is meant to prevent from causing jurisdiction. Id. In other words, what the case at bar comes down to, as we see it, is that Karsch, as an employee of Merchantonline.com, in response to correspondence from Rice and pursuant to the District Court's order, engaged in several communications into Tennessee via telephone, mail and e-mail regarding the Rule 144 letter. This does not constitute a purposeful availment of the privilege of transacting business in Tennessee, so as to invoke the benefits and protections of Tennessee law. To hold otherwise would be to offend the "traditional notions of fair play and substantial justice"

14

of which the Supreme Court spoke in International Shoe. See Kerry Steel, Inc. v. Paragon Industries, Inc., 106 F.3d 147, 152 (6th Cir.1997).

This result is confirmed by this court's previous decisions. For example, in Calphalon Corp. v. Rowlette, 228 F.3d 718 (6th Cir. 2000), we held that personal jurisdiction in Ohio was inappropriate despite the following: a choice of law provision selecting Ohio; the defendant's duty to report to the Ohio plaintiff; defendant's telephone and fax contacts with the Ohio plaintiff; the defendant's visits to Ohio offices; and a letter from defendant to the Ohio plaintiff threatening litigation. Id. at 722. This was because: (1) "no facts connected subject matter or performance of the contract at issue to the forum state," id.; (2) "the locus of the monetary injury is immaterial," id.; and (3) the defendant's "phone, mail, and fax contact with [the plaintiff in the forum state] and . . . physical visits there occurred solely because [the plaintiff] chose to be headquartered [in the forum state], not because [the defendant] sought to further its business and create continuous and substantial consequences there," id. at 723 (citations omitted throughout). See also Kerry Steel, Inc. v. Paragon Indus., Inc., 106 F.3d 147, 151 (6th Cir. 1997) (holding that personal jurisdiction was inappropriate when plaintiff "may or may not have reached out to Oklahoma, but in no way has it been shown that [the defendant] reached out to Michigan"); id. (holding that the existence of a contract, with no evidence "connecting either the subject matter or its performance" to the forum state, did not "automatically establish minimum contacts" and that it was "immaterial that [the defendant] placed telephone calls and sent faxes to [the plaintiff] in Michigan"); Walker Motorsport, Inc. v. Henry Motorsport, Inc., No. 95-2250, 1997 WL 148801 (6th Cir. March 31, 1997) (holding that "the telephone calls and letter on which the plaintiff's claim of jurisdiction primarily depends strike us as precisely the sort of random, fortuitous, and attenuated contacts that the Burger King

court rejected as a basis for haling non-resident defendants into foreign jurisdictions") (citations omitted throughout).

Here, the Plaintiffs-Appellants allege even less than the Calphalon plaintiffs. They have not alleged a choice of law provision. They have not alleged that Karsch had a duty to report to them in Tennessee. They have not alleged a single physical visit by Karsch to Tennessee. They have not alleged that he initiated any contacts, like a letter threatening litigation. Rather, this situation mirrors Reynolds v. International Amateur Athletic Fed'n, 23 F.3d 1110 (6th Cir. 1994). There, we held that the existence of a contract plus the defendant's phone and mail contacts with Ohio were "insufficient to support jurisdiction." Id. at 1119. As to the existence of an agreement, there was "no real evidence that a contract was negotiated . . ., created . . ., performed . . ., or breached in [the forum state]." Id. at 1118. And as to the defendant's other contacts, we held that "the use of interstate facilities such as the telephone and mail is a secondary or ancillary factor and cannot alone provide the minimum contacts required by due process." Id. at 1119 (citation omitted).

Purposeful availment, the "constitutional touchstone" of personal jurisdiction, exists where the defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (emphasis in original), and are such that he "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980). Contrary to the dissent's suggestion that the case turns on whether Karsch "chose to deal" with Plaintiffs-Appellants, *see* Dis. Op. at 2 (citing Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., 91 F.3d 790, 796 (6th Cir. 1996)), "the mere existence of a contract...is insufficient to confer personal jurisdiction," Calphalon Corp. v. Rowlette, 228 F.3d 718, 722 (6th

Cir. 2000). Without more, in other words, "choosing to deal" with others (that is, contracting with them) does not establish minimum contacts with their State. Still less does it do so when the party being haled into court---here, a corporate officer acting at the direction of others---did not take any part in the solicitation, negotiation, or performance of the contract. Accordingly, the Court finds that Defendant Karsch did not purposefully avail himself of the privilege of acting under Tennessee law.

Further, because this Court finds that the Plaintiffs-Appellants have not satisfied the first element, we will not address the second and third criteria

### B.     Leave to Amend the Complaint

On the same day it granted Karsch's motion to dismiss, the District Court denied Plaintiffs-Appellants' second motion to amend their complaint which sought to add new claims against Karsch. This Court reviews the district court's failure to grant leave to amend under an abuse of discretion standard. An abuse of discretion occurs when a court fails to state a legitimate basis for denying a motion to amend. See Foman v. Davis, 371 U.S. 178, 182 (1962).

A party may only amend a pleading a second time by leave of court. See Fed.R.Civ.Proc. 15(a). Leave should be freely given when justice so requires. See Foman, 371 U.S. at 182; Leary v. Daeschner, 349 F.3d 888, 904 (6th Cir.2003). In making this determination, a district court should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. See Hageman v. Signal L.P. Gas, Inc., 486 F.2d 479, 484 (6th Cir.1973). The district court did not discuss any of these factors, but instead denied the motion as moot in light of the contemporaneous dismissal of the complaint for lack of personal jurisdiction

17

over Karsch.[7]  The dismissal of existing claims, standing alone, is not, however, a legitimate basis for denying leave to amend.  See Dong ex rel. Dong v. Bd. of Educ., 197 F.3d 793, 804 (6th Cir.1999).  A court first should consider a pending motion to amend before dismissing a complaint.  See Ellison v. Ford Motor Co., 847 F.2d 297, 300 (6th Cir.1988).  Karsch argues that even if personal jurisdiction does exist, Plaintiffs-Appellants' motion to amend should be denied due to undue delay, bad faith, dilatory tactics, and a failure to cure deficiencies through their only previous amendment.  The issue, however, is moot because the court's basis for dismissing the complaint, a lack of personal jurisdiction, whether a valid basis or not, is no longer present.  Accordingly, the District Court is affirmed in regard to this issue as well.

## VI.    CONCLUSION

For the reasons discussed in this memorandum, the District Court did not err in finding that it lacked personal jurisdiction over defendant Karsch.  The District Court thus also did not err in denying Plaintiffs-Appellants' motion to amend as being moot.  Therefore, this Court AFFIRMS the District Court and remands this matter for such further proceedings as are consistent with this opinion.

---

[7]     The District Court, however, did permit the Plaintiffs-Appellants to file their second amended complaint against Merchantonline.com because factual allegations against Karsch could conceivably be considered as factual allegations against Merchantonline.com.

MARTHA CRAIG DAUGHTREY, Circuit Judge, dissenting. Because I conclude that defendant Karsch's contacts with Tennessee were intentional and injurious, and that they formed the basis of the plaintiffs' action against Karsch, I respectfully dissent from the majority's determination that those contacts were insufficient to establish personal jurisdiction.

The majority is correct in identifying the three-part test from *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968), as applicable to the facts of this case. Thus, in order to establish personal jurisdiction, the record must show that (1) the defendant purposefully availed himself of acting in or causing a consequence in the forum state; (2) the cause of action arose from the defendant's activities there; and (3) the acts or consequences had a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. As the majority also notes, the district court analyzed the facts only under the first prong, concluded that Karsch's contacts with Tennessee were insufficient to satisfy due process, and declined to exercise personal jurisdiction over Karsch.

As to the initial prong of the *Southern Machine* test, the majority posits that the defendant "did not purposefully avail himself of the privilege of acting under Tennessee law," based on several propositions – all of them erroneous, in my judgment.

First, the majority emphasizes that Karsch did not initiate his communications with persons in Tennessee. But, the "dispositive fact is not whether the plaintiff or the defendant initiated the contact between the parties, but whether the defendant ultimately 'chose to

19

deal' with the plaintiff." *Nationwide Mut. Ins. Co. v. Tryg Int'l. Ins. Co.*, 91 F.3d 790, 796 (6th Cir. 1996) (internal citation omitted). When Karsch responded to Rice's demand for the Rule 144 letter, he made allegedly fraudulent and negligent phone calls to Tennessee, and he sent allegedly fraudulent and negligent letters and e-mails into Tennessee. Regardless of whether Karsch or Lowery initiated these contacts, Karsch gave a direction to Lowery that he expected her to follow and that was therefore intended to have a result in Tennessee. Moreover, personal jurisdiction is also valid based on Karsch's actions prior to the court's order of January 2, 2001, directing Karsch to provide the 144 letters, because Karsch's instructions to Lowery by e-mail on September 15, 2000, predated the court's order. Thus, although the injury (sale at a lower price or no sale at all for the third trade) may have occurred after entry of the court's order, the allegedly tortious contacts occurred prior to entry.

Second, the majority seizes on the fact that Karsch's e-mail to Rice was sent to a "generic" address (yahoo.com). But regardless of the e-mail address, the message was directed to Rice, whom Karsch knew to be in Tennessee, given that his address was listed in the escrow agreement.

Third, the majority posits that actions taken by Karsch after the filing of the complaint cannot be considered. But regardless of Karsch's activities after the amended complaint was filed, the plaintiffs alleged that Karsch made the representations to Rice and contacted Lowery prior to that date.

Finally, the majority characterizes the basis of the claims as an allegation that Karsch did not issue the Rule 144 letter, i.e., that Karsch *failed* to act in a manner that would have subjected him to jurisdiction in Tennessee. But, again, regardless of what action Karsch did not take, the fact remains that jurisdiction over Karsch may be validly exercised based on the affirmative directions that he *did* direct toward Tennessee, with the clear intent that those actions would produce results affecting persons and property within Tennessee. If Karsch had simply ignored Rice's request for the Rule 144 letters, the majority's conclusion might have weight; but Karsch chose to act affirmatively – and thereby developed the requisite contacts with Tennessee – when he made allegedly tortious statements to Rice and independently contacted and directed Lowery. I would therefore hold that the defendant "purposefully availed himself of causing a consequence in the forum state."

I would further hold that the second prong was met, *i.e.*, that the plaintiffs' claims "arose from" Karsch's contacts with Tennessee, because the plaintiffs themselves claim that those contacts were tortious. "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996). Karsch's communications with Rice and Rice's broker easily satisfy this prong of the test because, together with Karsch's inaction in Florida and his instructions to the transfer agent in New York, they constitute plaintiffs' entire action against Karsch. Being the "heart" of the complaint, the communications sent into Tennessee clearly provide the basis for this cause of action.

21

Finally, in terms of the third prong, Karsch's contacts with Tennessee were substantial enough to make it reasonable to subject him to the personal jurisdiction of the Tennessee courts. Significantly, "[a]n inference arises that the third factor is satisfied if the first two requirements are met." *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002). In addition, the relevant factors to be considered are the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies. *See id.*

In this case, Karsch's communications to persons within the state constituted the doing of business there, rather than simply the exchange of information. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 892 (6th Cir. 2002). Karsch contacted Rice not only in Rice's capacity as an employee of Pagan Lewis Motors, a Texas corporation, but also in Rice's capacity as trustee for a large number of shares located in Tennessee and as personal owner of some of the shares. In the calls, letters, and e-mails in question, Karsch's intent was to discuss the liquidation of this stock, not merely to relay information from Florida to Pagan Lewis in Texas. Hence, the purpose of his call and e-mail to Rice's broker was not merely to provide information but to affect the actions of an individual in Tennessee.

We held in *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001), construing the Tennessee long-arm statute (Tenn. Code Ann. § 20-2-214), that evidence of a defendant's purposeful direction of communications into a forum that cause injury within the forum and form the "heart" of the action is sufficient to establish personal jurisdiction, regardless of the defendant's absence from the state. Like the allegedly fraudulent communications sent

by Janssen in that case, Karsch's allegedly fraudulent communications were "not merely incidental" but were "elements of the cause of action itself." *Id.* Like Janssen's, Karsch's communications did not "merely solicit[ ] business from the forum or involve[ ] services not alleged to form the basis of the complaint." *Id.* Nor are we presented here with "a single phone call made in an effort to *start* a business relationship." *Id.* at 333 (citing in comparison *Serras v. First Tenn. Bank Nat'l. Assoc.*, 875 F.2d 1212, 1218 (6th Cir. 1989)).

We also emphasized in *Janssen* the Supreme Court's recognition of the "inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state [and national] lines, thus obviating the need for physical presence within a State when business is conducted." 270 F.3d at 333 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). In circumstances similar to those in this case, other courts have extended *Burger King*'s "modern commercial life" expansion of personal jurisdiction to cover transmission of e-mail and use of the internet. *See*, *e.g.*, *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 511 (D.C. Cir. 2002) ("'Cyberspace' . . . is not some mystical incantation capable of warding off the jurisdiction of courts built from bricks and mortar."). I conclude that in this case, as in *Janssen*, w*e* should find that the plaintiffs have established at least a prima facie case of personal jurisdiction over the defendant and reverse the district court's decision to the contrary. For that reason, I respectfully dissent.